IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-05045-01-CR-SW-SRB |
| ) | |
| JOHNNY EUGENE THOMAS, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Johnny Eugene Thomas moves to dismiss the indictment for a violation of the constitutionally mandated separation of powers. (Doc. 22.) Additionally, Defendant moves to suppress all evidence seized during the search of his residence on January 24, 2014, arguing that the probation officers did not have reasonable suspicion to conduct a search and also did not conduct the search in a reasonable manner. (Doc. 23.) The Court held a hearing on these matters on October 8, 2015. (*See* Docs. 43 and 47.) Defendant was present with his attorney, David Mercer. The United States was represented by Ami Miller. For the reasons set forth below, it is **RECOMMENDED** that Defendant's Motion to Dismiss the Indictment, (Doc. 22), and Motion to Suppress Evidence, (Doc. 23), be **DENIED**.

### I.  Findings of Fact

On September 4, 2008, Defendant pled guilty to being a felon in possession of a firearm in *United States v. Thomas*, 06-05012-01-CR-SW-DGK, Doc. 53 (W.D. Mo.). On January 23, 2009, Defendant was sentenced to 60 months in the Federal Bureau of Prisons to be followed by a three year term of supervised release. *Thomas*, 06-05012-01-CR-SW-DGK, Doc. 56. The

Judgment set forth conditions of Defendant's supervised release. One condition required that Defendant not purchase, possess, use, distribute, or administer any controlled substance or paraphernalia related to any controlled substances, except as prescribed by a physician. Additionally, Defendant was not permitted to associate with any persons engaged in criminal activity, unless otherwise given permission to do so. *Id.* at Doc. 56. The Judgement also set forth the including the following provision:

> The defendant shall submit his person, residence, office or vehicle to a search, conducted by a U.S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

*Id.* at Doc. 56.

Defendant began his term of supervised release on February 22, 2013. At that time Daniel Schepers, United States Probation and Parole Officer ("USPO") for the Western District of Missouri, began supervising Defendant pursuant to the Judgment. (*See* Doc. 47.) On December 28, 2013, Defendant was arrested by the Webb City, Missouri police officers for receiving stolen property and possession of drug paraphernalia.[1] *Id.* at Docs. 62, 68. Officers noted that a trailer and car were discovered at Defendant's residence, both of which matched descriptions for items that had been reported stolen. (Doc. 47.) Defendant was subsequently arrested and searched incident to the arrest. *Thomas*, 06-05012-01-CR-SW-DGK, Docs. 62, 68. Upon the search of Defendant's person, officers discovered $933.00 in cash, a debit card with the name Michael Miller, and a clear plastic baggie containing a straw with residue that tested positive for methamphetamine. *Thomas*, 06-05012-01-CR-SW-DGK, Docs. 62, 68. A search of the interior of Defendant's residence was not conducted. *Id.* at Doc. 62.

---

[1] Prior to this incident, USPO Schepers had informed the Court of a violation of supervised release that occurred shortly after Defendant began his term of supervised release. *Thomas*, 06-05012-01-CR-SW-DGK, Doc. 60.

Around the time of the arrest, USPO Schepers was alerted to Defendant's arrest through a system that notifies the U.S. Probation and Parole Office when law enforcement has had contact or is looking to contact an offender under the Office's supervision. (Doc. 47.) Also after the arrest, Defendant called USPO Schepers to inform him of his arrest for stolen property as he was required to do pursuant to his conditions of release. (*Id.*); *see also Thomas*, 06-0501201-CR-SW-DGK, Doc. 56. On December 30, 2013, USPO Schepers communicated with the Webb City Police Department to discuss Defendant's contact with law enforcement. (Doc. 47.) The Webb City Police Department relayed the details of Defendant's arrest to USPO Schepers and later sent him the police report for the incident. (*Id.*) Also on December 30, 2013, an officer with the Frontenac, Kansas Police Department contacted USPO Schepers to ensure that he was aware of Defendant's arrest. *Id.*; *Thomas*, 06-0501201-CR-SW-DGK, Doc. 62. The Frotenac officer also informed USPO Schepers that a cell phone, which had been traced back to Defendant, was found at the scene of a theft of the trailer the previous weekend and contained drug-related texts addressed to Defendant. *Thomas*, 06-0501201-CR-SW-DGK, Doc. 62.

Based upon the information he received from law enforcement regarding Defendant, USPO Schepers believed he had a reasonable suspicion that Defendant had contraband or evidence of a violation of a condition of release in his home. (Doc. 47.) He subsequently made a request for a search, which was authorized. (*Id.*) On January 24, 2014, while Defendant was still serving term of supervised release in *Thomas*, 06-05012-01-CR-SW-DGK, officers with the U.S. Probation and Pretrial Office Search Team for the Western District of Missouri conducted a search of Defendant's residence and property. *Thomas*, 06-05012-01-CR-SW-DGK, Doc. 62. Webb City police officers were present to provide security for the search team, but did not participate in searching Defendant's residence. (Doc. 47.)

During the course of the search, the search team discovered a locked safe that was secured to the floor of the residence. (Doc. 47.) At that time, the search team had already discovered a loaded firearm and drugs. (*Id.*); *see also* 06-05012-01-CR-SW-DGK, Doc. 68. Based upon the presence of those items and his experience supervising hundreds of probationers, USPO Schepers believed the safe likely contained similar items of an illegal nature. (*Id.*) USPO Schepers attempted to get the combination of the safe from Defendant, but Defendant would not give it to him. (*Id.*) USPO Schepers and the search team then concluded they would have to break into the safe. (*Id.*) In an attempt to minimize damage to the residence and other items in the home, the search team pried the safe from the floor and took it outside the residence to open it. (*Id.*) Once the search team gained entry into the safe with a sledgehammer, they discovered a loaded firearm and more drugs. (*Id.*)

Ultimately, the search revealed several items, including baggies of various sizes containing methamphetamine and two loaded firearms,[2] the possession of which violated the terms of Defendant's supervised release. *Thomas*, 06-05012-01-CR-SW-DGK, Docs. 62, 68; *see also Thomas*, 06-05012-01-CR-SW-DGK, Doc. 56. Defendant was subsequently arrested by Webb City police officers and charged in the instant case with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 1); *see also Thomas*, 06-05012-01-CR-SW-DGK, Docs. 62, 68.

## II. Conclusions of Law for Motion to Suppress Evidence, (Doc. 23)[3]

---

[2] Specifically, the firearms were: a High Standard Sentinel Deluxe .22 caliber revolver with no identifiable serial number, and a Taurus PT99AFS 9mm pistol with assigned serial number TSG91928.

[3] Defendant actually filed his Motion to Dismiss the Indictment, (Doc. 22), prior to filing the Motion to Suppress, (Doc. 23). However, the Court believes it is easier to address the Motion to Suppress first, given that some of the case law and discussion for this Motion overlap with Defendant's separation-of-powers arguments in the Motion to Dismiss.

4

In his Motion to Suppress Evidence, (Doc. 23), Defendant argues that the search of Defendant's residence on January 24, 2014 violated his Fourth Amendment rights because: (1) the USPOs did not have reasonable suspicion to conduct the search; and (2) the search was not conducted in a reasonable manner. The Government contends that USPO had sufficient reasonable suspicion to conduct the warrantless search of Defendant's residence, and did so in a reasonable manner. The Court takes up the parties' arguments below.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. VI. When considering whether a search is reasonable within the meaning of the Fourth Amendment, courts look at the totality of the circumstances. *United States v. Knights*, 534 U.S. 112, 118 (2001). Reasonableness of a search is determined by balancing the degree to which the search intrudes upon an individual's privacy with the degree to which the search is need to promote legitimate government interests. *Id.* at 118-19. A probation condition "significantly diminish[es] [a defendant's] reasonable expectation of privacy." *Id.* at 119-20. As such, a search authorized by a condition of probation "requires no more than reasonable suspicion." *Id.* at 121. Specifically, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* For those same reasons, the Supreme Court has concluded that a probation officer need not obtain a warrant to conduct a search pursuant to a condition of supervised release. *Id.* at 121 (citation omitted).

The totality of the circumstances in this case show that USPO Schepers had sufficient reasonable suspicion to conduct a search, and that the search was conducted in a reasonable

5

manner consistent with the Fourth Amendment. With regards to reasonable suspicion, USPO Schepers had received quite a bit of information that indicated that Defendant was likely engaged in criminal activity or had contraband or evidence that violated a condition of his release. Specifically, he noted that the following led him to form such suspicion and put in a request to conduct a search of Defendant's residence and person: the information about the stolen trailer and vehicle found at Defendant's residence; the drug-related text messages to Defendant on a phone that had been found at the scene of the theft of the trailer and traced to him; and the items discovered on Defendant's person upon the search incident to his arrest on December 28th, including the items that had field-tested positive for methamphetamine.

During the hearing, Defendant seemed to contend that USPO Schepers should have taken additional steps to substantiate the information relayed to him by law enforcement officers from Webb City and Frotenac. However, Defendant need not have taken such steps to, for example, check the veracity of statements from law enforcement or determine whether the field tests from December 28, 2013 were reliable. Rather, the information USPO Schepers had as of December 30 was sufficient to establish reasonable suspicion and, when considering Defendant's diminished expectation of privacy as a probationer, thus made it reasonable for USPO Schepers to conduct a search of Defendant's residence and person. For the same reasons, USPO need not have obtained a warrant to conduct this search. Additionally, to the extent that Defendant also argues that the search was conducted with the intent of finding evidence that would lead to new criminal charges, USPO Scheper's actual individual motivations are irrelevant to the issue of whether there was reasonable suspicion to support the search. *Knights*, 534 U.S. at 122 (holding that "there is no basis for examining the official purpose" or motivations of the individual officer when determining the constitutionality of a search).

With regards to whether the search was conducted in a reasonable manner, Defendant most pointedly takes issue with the fact that law enforcement was present during the search and that the search team pried the safe from the floor and gained entry into it with a sledgehammer. These arguments, however, must fail. First, courts have held that the presence of law enforcement officers during a search conducted by a probation officer pursuant to a condition of supervised release is reasonable. *See Dunn v. Mattivi*, 535 F. App'x 535, 535 (8th Cir. 2013) (citing *Knights*, 534 U.S. at 122; *United States v. Brown*, 346 F.3d 808, 811-12 (8th Cir. 2003); *United States v. Becker*, 534 F.3d 952, 955-57 (8th Cir. 2008)). Second, the manner in which the search team decided to handle the safe was reasonable. USPO Schepers explained that, after finding a loaded firearm in Defendant's residence and drugs, his experience led him to believe that the locked safe would contain firearms or drugs. Only after attempting to obtain the combination from Defendant did UPSO Schepers and the search team decide to pry the safe from the floor and attempt to gain entry by other means. Additionally, USPO Schepers testified that the search team made the decision to move the safe outside the residence in an effort to minimize damage to the area surrounding the safe in the home. Further, considering that this was a locked safe – a device specifically made and used to prevent people from accessing its contents – the use of a sledgehammer to gain entry was not unreasonable. *See Lykken v. Brady*, 622 F.3d 925, 930 (8th Cir. 2010) ("Although the Fourth Amendment protects against unnecessarily destructive searches and seizures, *see Ginter v. Stallcup*, 869 F.2d 384, 388 (8th Cir. 1989) (per curiam), the execution of a search warrant does occasionally require damage to property, *see Dalia v. United States*, 441 U.S. 238, 258, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979)."). Therefore, considering the circumstances here, the search was conducted in a reasonable manner that complies with the Fourth Amendment. *Shade v. City of Farmington, Minn.*, 309 F.3d 1054, 1061 (8th Cir. 2002)

("The Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct.").[4]

Based on the foregoing discussion, Defendant's Motion to Suppress should be denied.

### III. Conclusions of Law for Motion to Dismiss the Indictment, (Doc. 22)

In his Motion to Dismiss the Indictment, (Doc. 22), Defendant contends that the indictment should be dismissed because of a violation of the Constitution's separation of powers guarantee. Defendant argues that, in conducting the search of Defendant's residence, USPO Schepers was not acting as a neutral arm of the judicial branch, but instead assumed a role of a law enforcement officer gathering evidence for the prosecution of new criminal charges. In doing so, Defendant contends, USPO Schepers took actions reserved for the executive branch and thus committed a separation-of-powers violation. The Government argues that the search was conducted pursuant to the conditions of supervised release, which allowed USPO Schepers to conduct a search upon reasonable suspicion that there was contraband or evidence of a violation of a condition of release in Defendant's residence. The Court takes up the parties' arguments below.

Article II, Section 1 and Article III, Section 1 delegate powers to the executive branch and judicial branch. U.S. Const. art. II, § 1; art. III, § 1. Specifically, Section 1 of Article II provides "[t]he executive Power shall be vested in a President of the United States of

---

[4] During the hearing, Defendant raised the new argument that the information was stale because 25 days had passed between when USPO Schepers received information about Defendant and when the search occurred. However, the record shows that the activities in late December were not the first time Defendant had violated his conditions of release. *See Thomas*, 06-05012-01-CR-SW-DGK, Doc. 60. That former violation, combined with the information USPO Schepers received, shows there was a fair probability that contraband or evidence of a violation of a condition of release would be found at Defendant's residence despite the delay. Thus, considering the circumstances in this case, a 25-day lapse does not render the information stale. *See United States v. Gragg*, 576 F. App'x 656, 658 (8th Cir. 2014) (42-day lapse between the last purchase of a controlled substance and the search did not render the information in a search warrant stale because "there was a fair probability that meth would be found at [defendant's] despite the delay.") (citing *United States v. Gibson*, 123 F.3d 1121, 1125 (8th Cir.1997); *United States v. Carnahan*, 684 F.3d 732, 736 (8th Cir. 2012)).

America[,]" while Section 1 of Article III provides "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Though the Constitution set up a separation of powers by establishing three branches of government with particular delegated duties, "the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent [one Branch] from obtaining the assistance of its coordinate Branches." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). "In determining what [one branch] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the governmental co-ordination." *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1928).

The judicial branch is tasked with punishment powers, which can include imposing special conditions of supervised release. *United States v. Mickelson*, 433 F.3d 1050, 1056 (8th Cir. 2006) ("A sentencing judge may impose special conditions of supervised release if the conditions are reasonably related to the § 3553(a) factors, involve no greater deprivation of liberty than is reasonably necessary, and are consistent with any pertinent policy statements issued by the United States Sentencing Commission.") (citing 18 U.S.C. § 3583(d)). It is well-established that courts may delegate their authority to carry out the sentence imposed to non-judicial officers, such as probation officers. *Id.* ("Conditions delegating limited authority to non judicial officials such as probation officers are permissible so long as the delegating judicial officer retains and exercises ultimate responsibility."); *United States v. Shurn*, 183 F. App'x 598, 601 (8th Cir. 2006) ("Probation officers are judicial branch employees hired to provide a wide range of information about defendants and their offenses.") (citing 18 U.S.C. § 3602(a)); *United States v. Bernardine*, 237 F.3d 1279, 1283 (11th Cir. 2001) ("A probation officer is appointed by

9

the district court and acts 'within the jurisdiction and under the direction of' the appointing court. 18 U.S.C. § 3602(a). . . . A probation officer is an 'arm of the court.'"). As an arm of the court, probation officers are tasked with keeping the court informed "as to the conduct and condition of a probationer or a person on supervised release, who is under his supervision, and report his conduct and condition to the sentencing court[.]" 18 U.S.C. § 3603(2). However, a probation officer is not empowered with the ability to investigate new criminal charges; those duties lie with the executive branch. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) ("The decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced."), *cert. denied*, 532 U.S. 1019 (2001).

In this case, USPO Schepers did not exceed his authority or go beyond the limitations set by the separation-of-powers doctrine. Pursuant to the terms of his conditions of release, Defendant was required to "submit his person, residence, office or vehicle to a search" to a search by a U.S. Probation Officer "upon reasonable suspicion of contraband or evidence of a violation of a condition of release[.]" *Thomas*, 06-05012-01-CR-SW-DGK, Doc. 56. As noted, USPO Schepers stated that his communications with law enforcement from Webb City and Frotenac formed the basis for his suspicion that Defendant had contraband or evidence of a violation of his conditions of release. This information, as discussed above, was sufficient to establish reasonable suspicion and allowed USPO Schepers, who has been properly delegated authority to supervise offenders under a term of supervised release, to conduct a warrantless search pursuant to the conditions of release. *Knights*, 534 U.S. at 121-22; *Mickelson*, 433 F.3d at 1056 (courts may delegate their authority to probation officers).

Additionally, contrary to Defendant's argument, there is no evidence that USPO Schepers collaborated with law enforcement or that he decided to conduct the search in order to get new charges brought against Defendant. Rather, the search was conducted because USPO Schepers believed that Defendant had contraband or had violated a condition of his supervised release. Even so, the other courts have concluded that a probation officer's duties, more often that not, overlap with those of law enforcement. *See United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (while "a parole search is unlawful when it is nothing more than a ruse for a police investigation. . . . [p]arole and police officers may work together, however, provided the parole officer is pursuing parole-related objectives[.]") (internal citations omitted); *United States v. Jennings*, 652 F.3d 290, 301 (affirming the district court's decision that a "USPO's statutory duties of keeping informed of whether a probationer is complying with the conditions of release necessarily overlap some law enforcement duties. . . That the results of the USPO's duties may have dual uses (i.e. forming the basis for a revocation of supervised release and the initiation of new criminal charges) does not run afoul of the separation of powers.") (quoting *United States v. Jennings*, 2009 WL 4110852, at *3 (N.D.N.Y. Nov. 23, 2009)). Such an overlap is not necessarily a violation of the constitution, given that the separation of powers doctrine does not prevent the branches of government from providing assistance to one another. *Mistretta*, 488 U.S. at 372. As such, the record shows that USPO Schepers did not exceed his authority in executing a search of Defendant's residence. Therefore, Defendant's Motion to Dismiss should be denied.

## IV. Conclusion

Accordingly, it is **RECOMMENDED** that Defendant's Motion to Suppress, (Doc. 23), be **DENIED**. Additionally, it is **RECOMMENDED** that Defendant's Motion to Dismiss the Indictment, (Doc. 22), also be **DENIED**.

**IT IS SO ORDERED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: December 14, 2015